UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARK ZEMIL,

    Plaintiff,

v.   CASE NO. 99-714-CIV-T-24B

ALEXANDER F. HERN, GERALD C.
PARKER and INKTOMI CORPORATION,

    Defendants.
_____/

## COMPLAINT

COMES NOW the Plaintiff, MARK ZEMIL, by and through his undersigned attorney, WILLIAM T. KIRTLEY, P.A., and as his complaint against Defendants ALEXANDER F. HERN, GERALD C. PARKER and INKTOMI CORPORATION, states as follows:

### PARTIES, JURISDICTION and VENUE

1. This is an action for money damages in excess of $75,000.

2. The Plaintiff is an individual residing in Sarasota County, Florida and has resided in such county during all times material to the allegations set forth in this Complaint.

3. ALEXANDER F. HERN is an individual believed by the Plaintiff to be a resident of the Tampa, Florida area and ALEXANDER F. HERN has resided in the Tampa, Florida area at all times material to the allegations set forth in this Complaint. ALEXANDER F. HERN is sometimes referred to in this Complaint as "Hern".

4. GERALD C. PARKER is an individual believed by the Plaintiff to be a resident of Safety Harbor, Florida and has been a resident of Safety Harbor, Florida substantially during all times material to the allegations set forth in this Complaint. GERALD C. PARKER is sometimes referred to in this complaint as "Parker".

5. INKTOMI CORPORATION is a corporate entity organized and existing pursuant to the laws of the State of Delaware and maintaining its principal place of business and corporate headquarters at San Mateo, California. Accordingly, INKTOMI CORPORATION is a corporate citizen of Delaware and California. INKTOMI CORPORATION is sometimes referred to in this Complaint as "Inktomi".

6. Hern, Parker and Inktomi are sometimes referred to in this Complaint collectively as the "Defendants".

7. This Court has jurisdiction over the claims for relief prayed for herein by the Plaintiffs pursuant to the Securities Exchange Act of 1934, as amended (15 USC 78a et seq), the existence of a Federal question and by virtue of 28 USC 1332. This Court has jurisdiction over the claims brought under state law by virtue of the doctrine of pendent jurisdiction in that such claims arise from a common nucleus of operative facts that are so intertwined with substantial significant violations of the Federal law cited herein as to make the exercise of jurisdiction appropriate, efficient, economically sound and practical. Accordingly, this Court is vested with jurisdiction by virtue of the provisions of the Securities Exchange Act of 1934, above cited, the existence of a Federal question, a jurisdictional amount in controversy in excess of $75,000 and diversity of citizenship by virtue of the corporate citizenship of Inktomi being Delaware and/or California.

8. Venue of this action is proper in this District pursuant to 15 USC 78aa in that the activities of the Defendants were within the flow of and substantially affected interstate commerce and their unlawful acts and violations complained of herein were substantially conceived, carried out and made effective as to the Plaintiff herein within the Middle District of Florida.

## BACKGROUND INFORMATION

9. The allegations set forth herein and in the claims made and the relief sought by the Plaintiff with respect to such claims relate to a course of conduct on the part of the Defendants (as subsequently indicated and alleged in this Complaint) which involved:

   A. The inducement of the Plaintiff by Hern and Parker to effect a loan for the benefit of Inktomi, which inducement was coupled with the material representation that the Plaintiff would receive repayment of the loan, together with interest thereon, and the economic benefits to be derived from a specified number of the shares of common stock of Inktomi (sometimes referred to in this Complaint as the "Inktomi Shares").

   B. The making of such loan by the Plaintiff to Inktomi as a result of the representations made by Hern and Parker, which representations were, in fact, material misrepresentations.

   C. The failure on the part of Hern, Parker and Inktomi to deliver the promised Inktomi Shares to the Plaintiff in a manner and number consistent with the representations of the Defendants.

10. The course of conduct alleged in this Complaint on the part of the Defendants involved violations of the Exchange Act and the Florida Securities and Investor Protection

Act, Chapter 517 Florida Statutes, as amended ("FIPA") in that the transaction subsequently alleged herein between the Plaintiff and the Defendants involved the sale and purchase of a security utilizing instrumentalities of interstate commerce and also constituted acts constituting the commission of common law fraud on the part of Hern and Parker.

11. On the basis of information and belief, none of the Defendants are registered as securities broker-dealers pursuant to the provisions of the Exchange Act and FIPA.

## GENERAL ALLEGATIONS

12. The Plaintiff, prior to the creation of the transaction subsequently alleged herein, was the record and beneficial owner of Inktomi Shares.

13. Hern and Parker at all times material to the allegations made in this Complaint were beneficial owners of Inktomi Shares and would derive and have derived economic benefit from the continued financial solvency of Inktomi.

14. In January 1996, the Plaintiff was approached by the Defendants Hern and Parker who were acting on behalf of Inktomi and, based upon the representations subsequently alleged in this Complaint, induced the Plaintiff to enter into a document styled "Loan Agreement" which is dated February 2, 1996 (the "Loan Agreement"). The parties to the Loan Agreement were the Plaintiff, Hern and Parker and the beneficiary of the loan which is the subject of the Loan Agreement was Inktomi. The Loan Agreement is included with this Complaint as Exhibit A and by this reference made a part hereof.

15. In summary, the Loan Agreement provided that the Plaintiff would loan to Inktomi the sum of $50,000, which amount would be wire transferred to the accounts of Inktomi on or about February 2, 1996. The Plaintiff, in fact, loaned such amount to Inktomi on or about February 2, 1996.

16. The Loan Agreement further provided that (A) the principal amount of the loan ($50,000) would bear interest at the rate of 12%, (B) the loan would be repaid within two weeks of February 2, 1996 and (C) the obligation of Hern was personally guaranteed by Parker.

17. The Loan Agreement further provided that, as an incentive to the Plaintiff and in further consideration to the Plaintiff for the making of the loan to Inktomi, Hern would transfer to the Plaintiff that number of Inktomi Shares which would have a value of not less than $50,000 computed on the basis of the offering price per share of the Inktomi Common Stock to be offered to the public pursuant to an initial public offering of Inktomi, which, in fact, was subsequently conducted as alleged herein. The Inktomi Shares to be received by the Plaintiff as a result of the transaction governed by the Loan Agreement were to be freely tradeable into the market for same existing on and after the public offering of the Inktomi Common Stock. This obligation was also personally guaranteed by Parker.

18. As alleged above, Parker is a party to the Loan Agreement as a guarantor of the performance of Hern and Inktomi.

19. Inktomi conducted a public offering of its shares of Common Stock pursuant to an effective registration statement under the Securities Act of 1933, as amended (15 USC 77a et seq) on or about June 10, 1998 at a public offering price of $18 per share of Inktomi Common Stock. The market price in terms of bid and asked in the after market for the Inktomi Shares is, at a time contemporaneous with the preparation and filing of this Complaint, substantially in excess of such $18 public offering price per share.

20. On the basis of the Loan Agreement and the public offering price of $18, the Plaintiff was entitled to receive not less than 2,777 shares of Inktomi Common Stock, that

being the product of $50,000 divided by $18. The Plaintiff has received 1,851 of such 2,777 Inktomi Shares and is entitled to receive 926 additional Inktomi Shares as adjusted for the stock classification described in paragraph 21 below.

21. Contemporaneous to the receipt of such 1,851 Inktomi Shares, Plaintiff was informed by the Defendants that Plaintiff was only entitled to receive such 1,851 Inktomi Shares in lieu of 2,777 Inktomi Shares under the Loan Agreement because Inktomi had, prior to the public offering, effected a reclassification of its Common Stock so that each three shares previously outstanding would become and be reclassified into two shares of Common Stock and that, accordingly, the Plaintiff, under the Loan Agreement, would be receiving not 2,777 Inktomi Shares, but the lesser amount of 1,851 Inktomi Shares, a difference of 926 Inktomi Shares. Subsequent to the public offering and the receipt by the Plaintiff of such 1,851 Inktomi Shares, Inktomi again reclassified its outstanding Common Stock as a result of which such 926 Inktomi Shares to which Plaintiff is still entitled have been reclassified into 1,852 Inktomi Shares. Such 1,852 Inktomi Shares have a present market value of $80 per share and an aggregate market value of $150,000.

22. The Loan Agreement did not provide for any adjustment in the number of shares to be received by the Plaintiff thereunder as a result of any stock reclassification or adjustment by Inktomi but specifically provided that the number of Inktomi Shares to be received by the Plaintiff would be of a value of $50,000 computed in the manner described in paragraph 20 of this Complaint is in conformance with the terms of the Loan Agreement.

23. The Loan Agreement and the making of the loan by the Plaintiff for the benefit of Inktomi constituted a sale and purchase of a security within the context of the Exchange Act and FIPA.

24. The Plaintiff has made demand upon Hern and Parker to perform their obligations under the Loan Agreement and to deliver to the Plaintiff 1,852 additional shares of unrestricted Common Stock of Inktomi. Hern and Parker have refused to act upon the demand of the Plaintiff.

25. Inktomi benefitted from the loan made by the Plaintiff to Inktomi, which loan was repaid with interest thereon at a time subsequent to the due date.

26. The course of conduct of Hern and Parker was undertaken with intent and carried out by Hern and Parker with a state of mind constituting scienter. Inktomi was aware of the loan transaction governed by the Loan Agreement and benefitted therefrom and acted at least with gross negligence in permitting the loan transaction to occur and thereafter to fail to honor the representations (which were misrepresentations) made by Hern and Parker to the effect that the Plaintiff would receive the number of Inktomi Shares called for by the Loan Agreement (2,777 shares).

27. The representations of Hern and Parker were material misrepresentations of material fact and as a result of the making of same, the Plaintiff was induced to enter into the transaction called for and governed by the Loan Agreement.

28. Privity exists between the Plaintiff and the Defendants.

29. As a result, the Plaintiff has been damaged in the amount of at lest $150,000 and has been required to retain the undersigned attorney to represent him with respect to the assertion of the claims set forth herein.

## COUNT I

## VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934, AS AMENDED

30. The Plaintiff realleges, reaffirms and adopts the allegations contained in paragraphs 1 through 29 of this Complaint as if fully set forth herein.

31. The Defendants violated the provisions of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder by engaging in the foregoing-described fraudulent, manipulative and deceptive practices in connection with the offer and sale of the Inktomi Shares as governed by the Loan Agreement and as alleged above in this Complaint.

32. The above damage and loss of the Plaintiff is the direct and proximate cause of the foregoing-described wrongful conduct on the part of the Defendants.

WHEREFORE, the Plaintiff demands judgment against the Defendants, and each of them, in such amount as the Court determines fair, reasonable and appropriate, which judgment amount would be the highest market value of 1,852 shares of Inktomi Common Stock during the time subsequent to the date that the 1,852 Inktomi Shares should have been delivered to the Plaintiff to the date of such judgment entry, or, alternatively, the delivery by the Defendants to the order of the Plaintiff of 1,852 freely transferable shares of Inktomi Common Stock to the Plaintiff and compensatory damages equal to the difference between the market value of such 1,852 Inktomi Shares on the date such Inktomi Shares should have been delivered to the Plaintiff or, if applicable, the date on which Plaintiff could have sold such Inktomi Shares into the market and the market value of such Inktomi Shares on the date of such delivery.

## COUNT II

## VIOLATION OF THE FLORIDA SECURITIES AND INVESTOR PROTECTION ACT

33. The Plaintiff realleges, reaffirms and adopts the allegations contained in paragraphs 1 through 29 of this Complaint as if fully set forth herein.

34. The Defendants violated the provisions of Chapter 517, Florida Statutes, as amended (FIPA) by engaging in a course of fraudulent conduct constituted by the making of material misrepresentations of material facts as herein alleged, which operated as a fraud on the Plaintiff in connection with the sale-purchase transaction governed by the Loan Agreement. Specifically, the Defendants engaged in conduct which constituted violations of the anti-fraud provisions of Section 517.301 of FIPA.

35. The damage and loss that the Plaintiff has sustained is a direct and proximate cause of the foregoing-described wrongful conduct on the part of the Defendants.

WHEREFORE, the Plaintiff demands judgment against the Defendants, and each of them, jointly and severally, for damages, interest, costs and attorneys fees as provided in FIPA, which damages are in the nature of compensatory damages in an amount equal to the highest market value of 1,852 shares of Inktomi Common Stock during the time subsequent to the date that the 1,852 Inktomi Shares should have been delivered to the Plaintiff to the date of such judgment entry, as well as interest on such amount as provided by FIPA and attorneys fees in such amount as the Court determines fair, reasonable and appropriate, or, alternatively, the delivery by the Defendants to the order of the Plaintiff of 1,852 freely transferable shares of Inktomi Common Stock to the Plaintiff and compensatory damages equal to the difference between the market value of such 1,852 Inktomi Shares on

the date such Inktomi Shares should have been delivered to the Plaintiff or, if applicable, the date on which Plaintiff could have sold such Inktomi Shares into the market and the market value of such Inktomi Shares on the date of such delivery.

## COUNT III

## COMMON LAW FRAUD

36. The Plaintiff realleges, reaffirms and adopts the allegations contained in paragraphs 1 through 29 of this Complaint as if fully set forth herein.

37. Defendants, as alleged in this Complaint, made false and fraudulent representations and omitted to state material facts in order to induce the Plaintiff to take the actions herein alleged and as provided for in the Loan Agreement.

38. The damages and losses that the Plaintiff has sustained are the direct and proximate result of the foregoing alleged wrongful conduct on the part of the Defendants.

WHEREFORE, the Plaintiff demands judgment against the Defendants and each of them, jointly and severally, in such amount as the Court determines fair, reasonable and appropriate, which amount would be the highest market value of 1,852 shares of Inktomi Common Stock during the time subsequent to the date that the 1,852 Inktomi Shares should have been delivered to the Plaintiff to the date of such judgment entry, or, alternatively, the delivery by the Defendants of 926 freely transferable shares of Inktomi Common Stock to the Plaintiff, or, alternatively, the delivery by the Defendants to the order of the Plaintiff of 1,852 freely transferable shares of Inktomi Common Stock to the Plaintiff and compensatory damages equal to the difference between the market value of such 926 Inktomi Shares on the date such Inktomi Shares should have been delivered to the Plaintiff

or, if applicable, the date on which Plaintiff could have sold such Inktomi Shares into the market and the market value of such Inktomi Shares on the date of such delivery.

## COUNT IV

### SPECIFIC PERFORMANCE

39. The Plaintiff realleges, reaffirms and adopts the allegations contained in paragraphs 1 through 29 of this Complaint as if fully set forth herein.

WHEREFORE, the Plaintiff, as alternative relief, requests that the Court enter a judgment order requiring the Defendants to specifically perform their obligations arising from the Loan Agreement, as alleged herein, and issue to the Plaintiff not less than 1,852 shares of Common Stock of Inktomi, which stock shall be unrestricted and freely tradeable by the Plaintiff into the market and for money damages to compensate for any difference between the market value of such 1,852 shares of Inktomi Common Stock on the date of the delivery thereof to the Plaintiff by the Defendants and the highest market value of such shares during the period commencing the date that such shares should have been delivered to the Plaintiff or, if applicable, the date upon which such shares, if timely delivered may have been sold by the Plaintiff into the market.

Respectfully submitted,

*/s/ William T. Kirtley*
William T. Kirtley
Florida Bar No. 244457
WILLIAM T. KIRTLEY, P.A.
2940 South Tamiami Trail
Sarasota, Florida 34239
941/952-9750
941/955-4027 (FAX)
Trial Counsel for Plaintiff

## Loan Agreement

This Agreement made this 2nd day of February, 1996 between Alexander F. Hern for the benefit of Inktomi Corporation outlines the terms and conditions which Mark Zemil will advance to Inktomi the sum of $50,000.00 in the form of a wire transfer prior to 2:00 p.m. at eastern standard time. The term of this Agreement is for (2) two weeks and it will bear interest in the amount of 12%. Inktomi Corporation will repay the loan which is personally guaranteed by Alexander F. Hern and Gerald C. Parker.

As an incentive for making this loan Alexander F. Hern will transfer to Mark Zemil common stock in Inktomi Corporation in the amount equal to $50,000.00 at the IPO price. The stock will be simultaneously transferred at the offering and will have the same registration rights afforded as Alexander F. Hern.

Parker, by executing this document personally guarantees the deliverance of the above stock.

Date: 2/2/96

By: _____
Alexander F. Hern

Date: 2/2/96

By: _____
Gerald C. Parker

EXHIBIT A